IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| CRISTINA CRUZ GROST, M.D., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | EP-13-CV-158-KC |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Defendant. | § | |

## ORDER

On this day, the Court considered the Motion to Dismiss (the "Motion") filed by Defendant United States of America ("Defendant"), ECF No. 13, in the above-captioned case (the "Case"). For the reasons set forth herein, the Motion is **GRANTED**.

## I.   BACKGROUND

On May 8, 2013, Plaintiff Cristina Cruz Grost ("Plaintiff") filed her Original Complaint in the Case, ECF No. 1. On May 25, 2013, Plaintiff filed a First Amended Complaint (the "Amended Complaint"), ECF No. 4. As is appropriate at this stage of the proceedings, the Court takes as true the following factual allegations in the Amended Complaint:

Plaintiff is a psychiatrist. Beginning in 2006, Plaintiff practiced psychiatry at William Beaumont Army Medical Center ("WBAMC") in El Paso, Texas without complaints by patients or staff. Am. Compl. 4. Defendant owned, operated, and controlled WBAMC, but it did not employ Plaintiff directly; instead, Plaintiff worked as an independent contractor pursuant to a contract with Spectrum Health Care, Inc. ("Spectrum"). Id. at 1, 4.

1

In 2008, certain employees of Defendant were transferred to WBAMC, among them Col. Ron Moruzzi ("Moruzzi") and Maj. Artin Terhakopian ("Terhakopian"). *Id*. at 4.  Soon thereafter, Moruzzi and Terhakopian started to manufacture complaints about Plaintiff, and made false statements about her to her employer, in an effort to have her employment terminated. *Id*.

Beginning in May 2011, Defendant's employees, including Moruzzi and Terhakopian, began to professionally harass, verbally abuse, and threaten Plaintiff, and subject her to offensive conduct. *Id* at 2. This conduct was intended to inflict emotional distress and anxiety on Plaintiff and cause her to quit her job. *Id*. Defendant had actual and constructive notice of its employees' behavior but took no steps to reduce or eliminate it. *Id*.

Also beginning in May 2011, and continuing through January 2012, Defendant's employees, including Moruzzi and Terhakopian, made knowingly false statements about Plaintiff to the Chief of the Department of Behavioral Health and to Spectrum in an effort to have Plaintiff's employment terminated.[1] *Id*. at 5. The false accusations concerned patients' length of stay and the use of electronic medical records. *Id*. Defendant's employees provided no documentation of their complaints when they were asked to do so. *Id*. Defendants' employees mistreated Plaintiff, favored other workers, and excluded her from professional and social activities, all of which were intended to cause her emotional distress and anxiety. *Id*.

At some point, Plaintiff protested to the Chief of the Department of Behavioral Health and to the Chief of the Hospital Clinical Command that she was being mistreated and falsely accused. *Id*. At that or another time, Plaintiff "report[ed] poor patient care, violations of regulations and deficits in clinical safety to the proper authorities." *Id*. at 7. Defendants' employees, including Moruzzi and Terhakopian, then retaliated against Plaintiff by severely

---

[1] It is unclear how, if at all, these allegations relate to the course of false statements that allegedly began in 2008.

limiting her patient contact, thereby leaving her with long periods of inactivity. *Id*. at 5. These "biased interventions [] ostracized [] Plaintiff." *Id*. at 6. However, despite the mistreatment Plaintiff faced, she "persevered in completing her tasks." *Id*. Defendant's employees then further retaliated against Plaintiff "by causing the staff [of the unit in which she worked] to ostracize her." *Id*.

The work climate at WBAMC caused Plaintiff severe emotional and professional harm. *Id*. Specifically, it caused her to "terminate her business relationship with Spectrum Healthcare Resources."[2] *Id*. at 7. Defendant and its employees interfered with Plaintiff's "past and future employers," thereby preventing her from obtaining other suitable employment. *Id*. at 6.

On February 21, 2012, Plaintiff filed suit against Moruzzi and Terhakopian in state court in El Paso, Texas, "appear[ing] to bring claims for libel, slander, intentional infliction of emotional distress, breach of contract, and others." Order at 1, *Grost v. Terhakopian*, No. 3:12-CV-114-KC (W.D. Tex. Apr. 20, 2012), ECF No. 4. On March 29, 2012, the defendants removed that case to this Court. *See* Notice of Removal, *Grost v. Terhakopian*, No. 3:12-CV-114-KC (W.D. Tex. Mar. 29, 2012), ECF No. 1. Upon the United States' motion, the Court dismissed Moruzzi and Terhakopian and substituted the United States as the proper defendant. *See* Order at 3, *Grost v. Terhakopian*, No. 3:12-CV-114-KC (W.D. Tex. Apr. 20, 2012), ECF No. 4. On July 12, 2012, the Court dismissed that case, holding that the Court lacked subject matter jurisdiction under the Federal Tort Claims Act ("FTCA") because Plaintiff failed to exhaust her administrative remedies prior to filing suit. *See* Order, *Grost v. Terhakopian*, No. 3:12-CV-114-KC (W.D. Tex. July 12, 2012), ECF No. 11. Even though Plaintiff was at that time

---

[2] The Court assumes that Spectrum Health Care, Inc. and Spectrum Healthcare Resources are one and the same, and hereafter refers to each as "Spectrum."

either "in the process of filing her claim" or intended to file a claim in the future, her suit was barred because she had not yet exhausted her administrative remedies. *Id*. at 4.

Shortly before the Court dismissed Plaintiff's original lawsuit, Plaintiff submitted an administrative claim to Defendant. *See* Resp., Ex. B. Plaintiff represents that she filed the administrative claim "in order to meet [the] jurisdictional requirements of this [C]ourt." Resp. 1. By letter dated July 2, 2013, Defendant informed Plaintiff that it had received the administrative claim, and explained that Plaintiff would be allowed to file suit under the FTCA six months after she filed the claim, provided the claim was properly filed and adequately documented. *See* Resp., Ex. B.

As noted, Plaintiff thereafter filed the instant Case on May 8, 2013, alleging the above-referenced facts. Though the Amended Complaint is not a model of clarity, the Court understands that the Amended Complaint asserts causes of action for tortious interference with contractual relations, breach of contract, libel, slander, intentional infliction of emotional distress, premises liability, violations of  29 U.S.C. § 660,[3] retaliation and hostile work environment under federal and/or state antidiscrimination laws, and, under six separate theories, negligence. *See* Am. Compl. 1-7.

On August 2, 2013, Defendant filed an answer to the Amended Complaint, ECF No. 5 ("Answer"), and thereafter filed the Motion on February 26, 2014. By the Motion, Defendant moves to dismiss all of Plaintiff's claims. *See* Mot. 14. Plaintiff has filed a response to the Motion, ECF No. 16 ("Response"), in which she withdraws or disclaims her allegations of libel, slander, and breach of contract. *See* Resp. 6 (stressing that "at no time did Plaintiff allege acts of

---

[3] As discussed further below, 29 U.S.C. § 660 prohibits employers from retaliating against employees for exercising any right afforded by the Occupational Safety and Health Act.

slander or libel except as couched in terms of inflicting emotional distress"); *Id*. at 7-8 (stating that Plaintiff had a "contract with [Spectrum] - not the [Defendant,]" and that "there is no privity between the Plaintiff and the [Defendant]"). The Response also adds a new claim alleging that Defendant violated 10 U.S.C. § 2409, which prohibits retaliation against employees of government contractors for reporting misconduct or dangerous conditions. *See* Resp. 8; 10 U.S.C. § 2409. Finally, Defendant has filed a reply to the Response, ECF No. 17 ("Reply").

## II.    DISCUSSION

### A.    Standards

Defendant moves to dismiss the Case under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). As explained below, the Court construes the Motion, to the extent it is made pursuant to Rule 12(b)(6), to be a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). The Court therefore also sets forth the standard for a Rule 12(c) motion.

#### 1.    Rule 12(b)(1) standard

Federal courts are courts of limited jurisdiction. *Exxon Mobile Corp. v. Allapattah Servs.*, 545 U.S. 546, 552 (2005); *People's Nat'l Bank v. Office of the Comptroller of the Currency of the U.S.*, 362 F.3d 333, 336 (5th Cir. 2004). Without jurisdiction conferred by statute or the Constitution, federal courts lack the power to adjudicate claims. *Exxon Mobil*, 545 U.S at 552; *People's Nat'l Bank*, 362 F.3d at 336. A party may challenge a district court's subject matter jurisdiction by filing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). Fed. R. Civ. P. 12(b)(1).

A federal court must consider a motion to dismiss pursuant to Rule 12(b)(1) before any other challenge because a court must have subject matter jurisdiction before determining the

validity of a claim. *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994). The party asserting jurisdiction constantly bears the burden of proof that the jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Where the motion to dismiss is based on the complaint alone, the court must decide whether the allegations in the complaint sufficiently state a basis for subject matter jurisdiction. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1998).

### 2. Rule 12(b)(6) standard

A motion to dismiss pursuant to Rule 12(b)(6) challenges a complaint on the basis that it fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). In ruling on a Rule 12(b)(6) motion, the court must accept well-pleaded facts as true and view them in a light most favorable to the plaintiff. *Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Though a complaint need not contain "detailed" factual allegations, a plaintiff's complaint must allege sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (internal quotation marks omitted) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 252 (5th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *Colony Ins. Co.*, 647 F.3d at 252. Ultimately, the "[f]actual allegations [in the complaint] must be enough to raise a right to relief above the

6

speculative level." *Twombly*, 550 U.S. at 555 (internal citation omitted).  Nevertheless, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

### 3.   Rule 12(c) standard

 Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleadings after the pleadings are closed, but early enough not to delay trial. Fed. R. Civ. P. 12(c). "The standard for deciding [a Rule 12(c)] motion is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). "A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." *Doe v. MySpace, Inc.* 528 F.3d 413, 418 (5th Cir. 2008) (citation omitted).

### B.   Analysis

The Court first addresses Plaintiff's argument that the Motion is untimely, and then determines whether each of Plaintiff's claims must be dismissed pursuant to Rules 12(b)(1) or 12(c).

### 1.   Timeliness of the Motion

Plaintiff argues that the Motion is untimely because Defendant previously filed an Answer. *See* Resp. 2-5. Motions raising defenses under Rule 12(b) "must be made before pleading." Fed. R. Civ. P. 12(b). Defendant filed the Answer, which is a responsive pleading, on August 2, 2013, and filed the Motion on February 26, 2014. The Motion is therefore untimely. *See id.*

Plaintiff raises a number of underdeveloped arguments as to the implications of the Motion's untimeliness. *See* Resp. 2-5. Plaintiff appears to argue that the Court must treat the Motion as a motion for judgment on the pleadings or a motion for summary judgment, or that Defendant has waived the defenses it now asserts, such that in either case, the Court must deny the Motion to allow Plaintiff an opportunity to conduct discovery. *See id.*

Plaintiff's arguments fail. First, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). "Subject-matter jurisdiction cannot be forfeited or waived." *Iqbal*, 556 U.S. at 671.  The untimeliness of the Motion is thus no bar to considering its arguments that the Court lacks subject matter jurisdiction.

Second, a district court may – as Plaintiff indeed argues – construe an untimely Rule 12(b)(6) motion as a Rule 12(c) motion for judgment on the pleadings. *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999); *Martinez v. City of Weslaco Tex.*, Civil Action No. 7:12-CV-417, 2013 WL 2951060, at *1 (S.D. Tex. June 14, 2013). A defendant may assert by a Rule 12(c) motion that the plaintiff has failed to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(h)(2)(B); *see Greninger*, 188 F.3d at 324. Such a motion is timely so long as it is "early enough not to delay trial." Fed R. Civ. P. 12(c). The Case is not set for trial until September 26, 2013, so entertaining a Rule 12(c) motion at this time poses no risk of delaying the trial. The Court accordingly construes the Motion, to the extent it argues that Plaintiff has failed to state a claim upon which relief can be granted, to be a Rule 12(c) motion for judgment on the pleadings. *See Greninger*, 188 F.3d at 324. Plaintiff's contention that the Court should deny the Motion because she is entitled to conduct discovery is without merit.

### 2.      Motion to dismiss under Rules 12(b)(1) and 12(c)

Defendant raises challenges to the Court's subject matter jurisdiction under Rule 12(b)(1) and to the sufficiency of Plaintiff's allegations under Rule 12(c). The parties' dispute over the Court's subject matter jurisdiction revolves around whether the United States has waived its sovereign immunity with regard to each of Plaintiff's causes of action. The Court therefore first explains the general nature of sovereign immunity and its applicability in FTCA cases, and then analyzes each of Plaintiff's claims in light of those principles.

"As the sovereign, the United States is immune from suit unless, and only to the extent that, it has consented to be sued." *Truman v. United States*, 26 F.3d 592, 594 (5th Cir. 1994) (citation omitted). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit. Sovereign immunity is jurisdictional in nature. Indeed, the terms of the United States' consent to be sued in any court define that court's jurisdiction to entertain the suit." *Fed. Deposit Ins. Co. v. Meyer*, 510 U.S. 471, 475 (1994) (quotation marks and citations omitted).

Through the FTCA, 28 U.S.C. §§ 2671-80, the United States waived its sovereign immunity under some circumstances. *Id.* § 2674. "The FTCA imposes liability upon the United States for the tortious conduct of its employees, when acting within the course and scope of their employment, in the same manner and to the same extent as a private individual under like circumstances." *Hebert v. United States*, 438 F. 3d 483, 486 (5th Cir. 2006) (citing 28 U.S.C. §§ 2674, 1346). However, Congress imposed special administrative requirements on parties wishing to sue the United States, and explicitly preserved the United States' sovereign immunity for certain intentional torts committed by its employees. 28 U.S.C. §§ 2675(a), 2680(h).

9

First, under circumstances such as those here, one may not sue the United States unless they first present their claim to the appropriate federal agency and the agency either finally denies it or fails to dispose of it within six months. *See id.* § 2675(a). As discussed, the Court dismissed Plaintiff's earlier lawsuit against Defendant because Plaintiff failed to exhaust her administrative remedies. *See* Order, *Grost v. Terhakopian*, No. 3:12-CV-114-KC (W.D. Tex. July 12, 2012), ECF No. 11. Plaintiff has now attached to her Response an administrative claim which she filed with WBAMC on June 21, 2012, and a letter dated July 2, 2012, acknowledging receipt of the claim. *See* Resp., Ex. B. The letter notes that Plaintiff may, per the FTCA, file suit six months after filing her administrative claim. *See id.* Plaintiff filed the Case on May 8, 2013, more than six months after she filed her administrative claim. Plaintiff avers that she thereby "met the jurisdictional requirements of 28 U.S.C. 2675(a)," which Defendant does not dispute. *See* Resp. 8; Reply 1-6.  The Court accordingly holds that Plaintiff has exhausted her administrative remedies and may file suit against Defendant under the FTCA.

Second, the FTCA excepts from its waiver of sovereign immunity "[a]ny claim *arising out of* assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680(h) (emphasis added).  To determine whether a claim "arises out of" one of the enumerated intentional torts, a court must "focus on the conduct upon which the plaintiff's claim is based." *Truman*, 26 F.3d at 594.

> If the conduct upon which a claim is based constitutes a claim arising out of any one of the torts listed in section 2680(h), then the federal courts have no jurisdiction to hear that claim. Even if a plaintiff styles a claim so that it is not one that is enumerated in section 2680(h), the plaintiff's claim is still barred when the underlying governmental conduct essential to the plaintiff's claim can fairly be read to arise out of conduct that would establish an excepted cause of action.

*Id.* (quotation marks and citations omitted).

Thus, a plaintiff may not avoid the § 2680(h) bar by "framing his complaint in terms of the government's negligent failure to prevent the excepted harm." *Id*. at 594-95 (citing *McNeily v. United States*, 6 F.3d 343, 347 (5th Cir. 1993)). Such a negligence claim "arises out of" the excepted intentional tort, and is therefore barred. *See id*. (citing *Garcia v. United States*, 776 F.2d 116 (5th Cir. 1985)). However, "[s]o long as some aspect of the conduct upon which a plaintiff bases a tort claim does not constitute a tort listed in section 2680(h), the suit is not barred." *Id*. at 595. In other words, "in cases in which the facts alleged in a complaint have two distinct aspects that may give rise to two similar torts," the fact that one such tort is barred by § 2680(h) does not mean that the other tort is also barred. *See id*. "Although there is no justification for any court to read exemptions into the [FTCA] beyond those provided by Congress, the exceptions that do appear in the FTCA must be strictly construed in favor of the government." *Id*. at 594. "The question of whether the United States has waived sovereign immunity pursuant to the FTCA goes to the court's subject-matter jurisdiction, and may therefore be resolved on a Rule 12(b)(1) motion to dismiss." *Willoughby v. United States ex rel. U.S. Dep't of the Army*, 730 F.3d 476, 479 (5th Cir. 2013) (citation omitted).

The Court now considers in turn whether each of Plaintiff's causes of action must be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1) or 12(c). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Id.* (citation omitted). Therefore, where applicable, the Court first addresses Defendant's attacks on the Court's subject matter jurisdiction, such as those based on sovereign immunity, before addressing the sufficiency of Plaintiff's allegations.

### a.      Tortious interference with contract

The FTCA preserves the sovereign immunity of the United States for claims "arising out of . . . interference with contract rights." 28 U.S.C. § 2680(h). Defendant argues that Plaintiff's claim for "interference with [her] business and occupation" must therefore be dismissed. *See* Mot. 5. Plaintiff argues that she has "alleged tortious interference with her contract with her third party employer – not the United States[,]" and that this sort of claim is not barred because it is "not listed as a statutory exception under Section 2680(h) of the [FTCA]." Resp. 7-8.

Plaintiff's argument does not help her cause. As noted above, the plain terms of the FTCA bar claims "arising out of . . . interference with contract rights." 28 U.S.C. § 2680(h). To the extent Plaintiff argues, as she appears to, that this provision bars claims arising from the United States' interference with its own contracts, but allows claims for the United States' interference with contracts to which it is not a party, she is incorrect. As the Fifth Circuit has explained, "interference by the government with contract rights existing between the government and an FTCA plaintiff is merely breach of contract, not a tort at all. Thus, *§ 2680(h) only applies to contracts to which the government is not a party*, because only interference with those contracts gives rise to an action sounding in tort." *Williamson v. U.S. Dep't of Agric.*, 815 F.2d 368, 378 n.13 (5th Cir. 1987) (emphasis added); *see Vander Zee v. Reno*, 100 F.3d 952, 1996 WL 625346, at *4 (5th Cir. 1996) (holding that the FTCA barred a claim alleging that the United States interfered with the plaintiff's contract with his private employer).

Moreover, the FTCA bars claims for interference with both existing and prospective contracts. *See Bosco v. U.S. Army Corps of Eng'rs, Fort Worth Dist.*, 611 F. Supp. 449, 453-54 (N.D. Tex. 1985) (citing *Art-Metal U.S.A., Inc. v. United States*, 753 F.2d 1151, 1154-55 (D.C. Cir. 1985)). Thus, Plaintiff's claim is barred regardless of whether she complains that Defendant

12

interfered with her existing contract with Spectrum or prevented her from contracting with other potential employers. *See id.*; Am. Compl. 6 (alleging that Defendant has interfered with or continues to interfere with Plaintiff's "past and future employers").

Similarly, although tortious interference with business relations is an independent cause of action under Texas law, the FTCA bars it because it arises out of interference with contract rights. *See Bosco*, 611 F. Supp. at 453-54 (noting that "[t]he distinction is one without a difference [] for purposes of the FTCA exceptions") (citing *C.F. & I. Steel Corp. v. Peter Sublett & Co.,* 623 S.W.2d 709, 715 (Tex. App. 1981)); *Maibie v. United States*, No. 3-07-CV-0858-D, 2008 WL 4488982, at *3 (N.D. Tex. Oct. 7, 2008). Plaintiff's claim is therefore barred regardless of whether she labels it "malicious interference with the business and occupation of Plaintiff" or "tortious interference with her lawful business and occupation," as she does in the Amended Complaint, or "tortious interference with her contract," as she does in the Response. *See* Am. Compl. 7; Resp. 7. In sum, however Plaintiff characterizes or labels this cause of action, it is barred by the FTCA because it arises out of interference with contract rights.

### b.    Intentional infliction of emotional distress

The parties dispute whether the United States has waived its sovereign immunity with regard to claims for intentional infliction of emotional distress ("IIED"). IIED is not one of the intentional torts listed in § 2680(h) for which the United States explicitly retained its sovereign immunity. *See* 28 U.S.C. § 2680(h). Whether Plaintiff's IIED claim is barred therefore turns on whether it arises out of conduct that would establish an excepted cause of action. *See Truman*, 26 F.3d at 594. In the event that the FTCA does not bar Plaintiff's IIED claim, the parties also dispute whether Plaintiff has stated a claim for IIED upon which relief can be granted.

i.      **Sovereign immunity for IIED claims**

Defendant argues that Plaintiff's IIED allegations arise out of her since-disclaimed libel and slander allegations. Libel and slander are among the intentional torts listed in § 2680(h) for which the United States has not waived its sovereign immunity. Defendant argues that Plaintiff's IIED claim is therefore barred because "the underlying governmental conduct essential to the plaintiff's claim can fairly be read to arise out of the conduct that would establish an excepted cause of action."[4] Mot. 6 (quoting *Truman*, 26 F.3d at 594). Plaintiff responds that "[t]he best the Defendant has is a potential overlap of claims and as set out in *Truman*, that does not warrant dismissal and bar the Plaintiff from pursuing a distinct claim arising out of other aspects of the Government's conduct." Resp. 7. Plaintiff does not explain how her claims arise out of aspects of Defendant's conduct that do not constitute libel or slander.

The Fifth Circuit held in *Truman* that a claim for IIED is not necessarily barred by § 2680(h). 26 F.3d at 595. In that case, the plaintiff alleged that her supervisor mistreated her in numerous ways, made offensive comments, criticized her to others, and once "reached behind himself in a low grabbing manner, aiming his hand towards [the plaintiff's] crotch area." *Id*. at 593 (quotations marks omitted). The district court held that the plaintiff's claims arose out of an assault or a battery, and were thus barred by the FTCA. *See id*. at 596. The Fifth Circuit reversed. Because the plaintiff did not allege that

---

[4] Though the disjointed nature of the Amended Complaint makes it difficult to determine which allegations underlie each cause of action, the Court concludes that all of Plaintiff's allegations are intended to support her IIED claim. In any case, Defendant is incorrect to assert that "[a]part from her grievance that Defendant 'severely limited her patient contact,' the only *factual* allegations Plaintiff makes in her Complaint are those that concern the allegedly false statements made by Defendant's employees." Mot. 5-6. Plaintiff also alleges, albeit in a conclusory manner, that Defendant's employees abused, harassed, threatened, and mistreated her, subjected her to offensive conduct, caused her to be ostracized, and caused her to be without employment.

the supervisor's actions resulted in offensive contact or fear of imminent offensive

contact – which are critical elements of assault and battery – the underlying conduct was

not assault or battery. *Id.* The district court had also held that the plaintiff's suit had to be

dismissed in its entirety because the offensive behavior she alleged included three

instances of slander. *Id.* The Fifth Circuit reversed as to that holding as well. Because the

plaintiff's allegations went far beyond the three instances of slander, those "other aspects

of the conduct pleaded c[ould] form the basis for a suit brought under the FTCA." *Id.*

Thus, because the underlying governmental conduct was not the excepted torts of assault

or battery, and at least some of it was not the excepted tort of slander, the plaintiff's IIED

claim was not barred. *See id.* at 597. Therefore, Plaintiff's IIED claim in the Case is

barred only if it arises entirely out of conduct that would establish an excepted cause of

action. *See id.* at 596-97.

Whether the conduct of Defendant and its employees establishes an excepted

cause of action is a question of federal common law. *See United States v. Neustadt*, 366

U.S. 696, 705-06 (1961). "Although state law governs the scope of the United States'

*substantive* tort liability, we must look to federal statutory and common law to determine

whether a claim is procedurally barred or excluded under the FTCA." *Schwarder v.*

*United States*, 974 F.2d 1118, 1127 (9th Cir. 1992) (citing *Neustadt*, 366 U.S. at 705-11);

*see Leleux v. United States*, 178 F.3d 750, 755 n.2 (5th Cir. 1999) ("It is a matter of

federal law, not state law, whether [an] exception [] applies.") (citations omitted).

To construe the FTCA exceptions, the Court "must turn to the traditional and

commonly understood definition of the tort in question, consulting such appropriate

sources as the *Restatement (Second) of Torts* and federal cases construing the exception."

*Talbert v. United States*, 932 F.2d 1064, 1066 (4th Cir. 1991) (quotation marks and citations omitted). "State law is relevant only in determining the standard of *negligence* to apply in an FTCA case that has not been exempted under § 2680(h)." *Leleux*, 178 F.3d at 755 n.2 (citations omitted). Both the Fifth Circuit and district courts within the circuit have turned to the Restatement's definition of excepted torts to determine whether claims under the FTCA were barred by § 2680(h). *See, e.g., Leleux*, 178 F.3d at 755-56; *Truman*, 26 F.3d at 596; *Griego v. United States*, No. EP-99-CA-164-DV, 2000 WL 33348763, at *1 (W.D. Tex. June 2, 2000); *Bosco*, 611 F. Supp. at 453.

However, notwithstanding the preference to use cases applying federal common law and other appropriate sources like the Restatement to determine the scope of the FTCA exceptions, courts sometimes draw from state law when it will assist in shedding light upon "the traditional and commonly understood definition of the tort in question." *Talbert,* 932 F.2d at 1066 (quotation marks and citations omitted). *See, e.g., Davila v. United States*, 713 F.3d 248, 261-62 (5th Cir. 2013) (using Texas law on assault and false imprisonment); *Truman*, 26 F.3d at 596 (using both the Restatement and Texas law on battery); *Knowles v. United States, ex rel. F.B.I.*, No. 4:07-CV-578, 2009 WL 2882956, at *5 (E.D. Tex. Aug. 31, 2009) (using Texas law on defamation).

The Court finds that Texas law on libel and slander is instructive here because, in an apparent attempt to plead her now-disavowed claims for libel and/or slander, Plaintiff explicitly alleged all the elements of libel and slander under Texas law.  Additionally, Texas courts regularly cite the Restatement when discussing the Texas law of defamation, which encompasses both libel and slander. *See, e.g., Neely v. Wilson*, 418 S.W.3d 52, 61 (Tex. 2013); *GoDaddy.com, LLC v. Toups*, --- S.W.3d ----, 2014 WL 1389776, at *5 (Tex. App. Apr. 10, 2014); *World Car*

*Nissan v. Abe's Paint & Body, Inc.*, No. 04-12-00457, 2013 WL 3963700, at *5 (Tex. App. July 31, 2013). Because Texas law draws heavily from the Restatement, the Court believes that Texas libel and slander law is, for the purpose at hand, a reasonable proxy for the federal common law of FTCA exceptions as it pertains to libel and slander claims.

Under Texas law, the elements of libel are "that the defendant (1) published a statement; (2) that was defamatory concerning the plaintiff; (3) while acting with either actual malice, if the plaintiff was a public official or public figure, or negligence, if the plaintiff was a private individual, regarding the truth of the statement." *Rehak Creative Servs., Inc. v. Witt*, 404 S.W.3d 716, 727 (Tex. App. 2013) (quoting *WFAA–TV, Inc. v. McLemore,* 978 S.W.2d 568, 571 (Tex. 1998)) (quotations marks omitted). Slander is a defamatory statement that is orally communicated or published to a third person without legal excuse. *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995) (citations omitted). A statement is defamatory when a person of ordinary intelligence would interpret it in a way that tends to injure the subject's reputation and thereby expose the subject to public hatred, contempt, or ridicule, or financial injury, or to impeach the subject's honesty, integrity, virtue, or reputation. *Rehak Creative Servs.*, 404 S.W.3d at 728 (citing Tex. Civ. Prac. & Rem. Code. Ann. § 73.001; *Turner v. KTRK Television, Inc.,* 38 S.W.3d 103, 114–15 (Tex. 2000)).

Plaintiff pleaded that the employees "circulated written materials and made statements" and "published . . . statements with actual malice" which they "knew were false" and which "constituted defamation" because they "impeach the Plaintiff's honesty, professional reputation, and character." Am. Compl. 3-4. If Plaintiff's conclusory allegations are true, Defendant's employees committed libel and/or slander under Texas law. *See Rehak Creative Servs.,* 404 S.W.3d at 727-28 (citations omitted); *Randall's*

17

*Food Mkts.* 891 S.W.2d at 646 (citations omitted). Moreover, though Plaintiff disclaimed or abandoned her libel and slander causes of action in her Response, she continues to maintain that she alleged "acts of libel or slander" in support of her IIED claim. Resp. 6. The Court concludes that Plaintiff's recitation of the elements of libel and slander under Texas law, coupled with her averment that she alleged "acts of libel and slander," demonstrate that at least some of the conduct underlying Plaintiff's IIED claim falls squarely within the "commonly understood definition" of libel and slander under federal common law. *See Talbert,* 932 F.2d at 1066 (quotation marks and citations omitted). Any claims arising out of that conduct are therefore barred by the FTCA. *See Truman*, 26 F.3d at 594.

The question remains, however: which acts underlying Plaintiff's vague and conclusory IIED claim arise out of libel or slander? The Court concludes that the allegations concerning the publication of false statements about Plaintiff arise out of conduct that would establish libel or slander. *See Rehak Creative Servs.,* 404 S.W.3d at 727-28 (citations omitted); *Randall's Food Mkts.* 891 S.W.2d at 646 (citations omitted). Specifically, Plaintiff's allegations that Defendant's employees "manufacture[d] complaints about Plaintiff in an effort to have her employment terminated" and "made false accusations to the Chief of the Behavioral Health Department and to [Spectrum]" therefore arise from libel or slander. Am. Compl. 4, 5; *see Rehak Creative Servs.,* 404 S.W.3d at 727-28 (citations omitted); *Randall's Food Mkts.* 891 S.W.2d at 646 (citations omitted). Plaintiff's IIED claim is therefore barred by the FTCA to the extent it arises from those or similar acts. *See Truman*, 26 F.3d at 594; *Cox v. United States*, No. C-07-235, 2007 WL 1795711, at *3 (S.D. Tex. June 20, 2007) (IIED allegation based on "false

publication" barred because it arose out of defamation); *Doe v. United States*, 83 F. Supp.

2d 833, 839 (S.D. Tex. 2000) (IIED claim barred because plaintiffs did not "allege any

government misbehavior other than the publication of [] false information.").

By contrast, the allegations that Defendant's employees abused, harassed,

threatened, and mistreated Plaintiff, subjected her to offensive conduct, caused her to be

ostracized, and caused her to be without employment do not arise out of libel or slander

because they do not concern the publication of false statements about Plaintiff. *See Rehak*

*Creative Servs.*, 404 S.W.3d at 727-28; *Randall's Food Mkts*, 891 S.W.2d at 646.

Because those allegations do not arise from libel or slander, they are not barred by the

intentional tort exception to the FTCA. *See Truman*, 26 F.3d at 594-97. Thus, because

"aspects of the conduct alleged in [Plaintiff's] complaint do not constitute a tort

enumerated in section 2680(h)," her IIED claim is not barred to the extent it is based on

that conduct. *Id.* at 596.

### ii.     Sufficiency of Plaintiff's remaining IIED allegations under Rule 12(c)

Though Plaintiff's IIED allegation is not barred to the extent it is not rooted in libel or

slander, it must nonetheless be dismissed because it fails to state a claim upon which relief can

be granted.

Under the FTCA, the United States is liable in tort if a private person would be liable

under "the law of the place where the act or omission occurred." 28 U.S.C § 1346(b)(1); *see id.* §

2674.  Because the events in question occurred in Texas, the Court applies Texas law. *See*

*Meyer*, 510 U.S. at 478 ("[Section] 1346(b)'s reference to the 'law of the place' means law of the

State—the source of substantive liability under the FTCA.") (citations omitted); *Hawkins v.*

*United States*, No. EP-93-CA-193-H, 1994 WL 802850 at *1, *3-4 (W.D. Tex. Nov. 29, 1994) (applying Texas law to IIED claim under the FTCA where the events in question occurred in Texas).

To recover for intentional infliction of emotional distress under Texas law, "a plaintiff must prove that (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the emotional distress suffered by the plaintiff was severe." *Twyman v. Twyman,* 855 S.W.2d 619, 621 (Tex. 1993). Extreme and outrageous conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Randall's Food Mkts.*, 891 S.W.2d at 644 (quotation marks and citations omitted). "Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Tyson v. Austin Eating Disorders Partners*, LLC, No. A-13-CA-180-SS, 2013 WL 3197641, at *8 (W.D. Tex. June 21, 2013) (citing *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004)).

In the workplace context, conduct "including demeaning comments, unfair criticism, demotion, termination or other harassment, is not sufficiently 'extreme and outrageous,' however deplorable it may be." *Cardiel v. Worldwide Tech Holding Co*., No. EP-11-CV-256, 2011 WL 3047712, at *2 (W.D. Tex. July 22, 2011) (Cardone, J.) (citing *Bird v. Simpson Inv*., 121 F.3d 705, at *7 (5th Cir. 1997) (unpublished)). The bar for outrageous conduct is high; "[i]t is only in the most unusual of employment cases that an employer's conduct rises to the level of extreme and outrageous conduct." *Id.* (citing *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 613 (Tex. 1999)). "Thus, to establish a cause of action for intentional infliction of emotional distress in the workplace, 'an employee must prove the existence of some conduct that brings the dispute

outside the scope of an ordinary employment dispute and into the realm of extreme and outrageous conduct.'" *Id.* (quoting *GTE Sw.,* 998 S.W.2d at 613).

Assuming without deciding that Plaintiff has adequately pleaded that Defendant's employees acted recklessly or intentionally and caused her severe emotional distress, her IIED claim fails because she does not allege facts showing that the employees' conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Randall's Food Mkts.*, 891 S.W.2d at 644.

Plaintiff alleges only in the vaguest terms that she suffered harassment, verbal abuse, threats, offensive behavior, mistreatment, favoritism of other workers, ostracism, exclusion from professional activities, limitation of patient contact, and obstruction of her employment prospects. However, nowhere does Plaintiff straightforwardly state what Defendant's employees said or did to cause her severe emotional distress. "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Thus, though Plaintiff may have been subjected to troubling conduct, the Court cannot simply accept her conclusion that the employees' behavior constituted, for instance, "harassment" or "mistreatment," let alone that it was sufficiently extreme and outrageous so support a claim for IIED. Because Plaintiff does not adequately plead the element of "extreme and outrageous" conduct, her IIED claim must be dismissed in its entirety. *See Randall's Food Mkts.*, 891 S.W.2d at 644; *Twombly*, 550 U.S. at 555.

### c.    Premises liability

Plaintiff attempts to allege that Defendant is liable to her in premises liability. She fails to state a claim for which relief can be granted because she does not allege key elements of a premises liability claim.

Because the events in question occurred in Texas, the Court applies Texas law. *See Viveros v. United States*, 494 F. App'x 437, 439 (5th Cir. 2012) (applying Texas law to a premises liability claim under the FTCA where the events in question occurred in Texas); *Antunez v. United States*, No. 05-CV-55, 2006 WL 2933885, at *1 (S.D. Tex. 2006) (same).[5]

Under Texas law, an invitee must prove the following to establish a claim for premises liability:[6]

> (1) Actual or constructive knowledge of some condition on the premises by the owner/operator;
> (2) That the condition posed an unreasonable risk of harm;
> (3) That the owner/operator did not exercise reasonable care to reduce or eliminate the risk; and
> (4) That the owner/operator's failure to use such care proximately caused the plaintiff's injuries.

*Wal-Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934, 936 (Tex. 1998).

Plaintiff fails to allege that Defendant was aware of a condition on the premises which posed an unreasonable risk of harm. Instead, Plaintiff merely alleges that she was "professionally

---

[5] There is some authority from district courts in this circuit indicating that the FTCA bars general premises liability claims against the United States where the plaintiff does not allege that the dangerous condition was caused by the negligence of a specific federal employee. "By expressly waiving immunity for the tortious conduct of its employees, and only its employees, the FTCA requires a more focussed approach that requires the courts to determine the relationship to the United States of the actor whose negligence might be imputed to the government under state law." *Cupit v. United States*, 964 F. Supp. 1104, 1112 (W.D. La. 1997) (quoting *Berkman v. United States*, 957 F.2d 108, 113 (4th Cir. 1992)); *see Longino v. U.S. Dep't of Agric.*, 912 F. Supp. 2d 424, 428 (W.D. La. 2012) (collecting cases and noting that the Fifth Circuit has not ruled on the issue); *Jamison v. United States*, 491 F. Supp. 2d 608, 615-20 (W.D. La. 2007) (collecting cases). The Court need not resolve this question because Plaintiff fails to state a claim for premises liability.

[6] It is not clear in the first instance whether Plaintiff should be considered an invitee and Defendant a landowner, or Plaintiff an employee and Defendant an employer. However, that distinction is unimportant under the circumstances, because "[a]lthough the two fields of law (landowners-invitee and master-servant) are entirely separate, Texas courts generally apply premises-liability principles in suits by injured employees." *Austin v. Kroger Tex. L.P.*, --- F.3d ----, 2014 WL 1142325, at *4 n.3 (5th Cir. Mar. 21, 2014) (quotation marks and citations omitted).

harassed, verbally abused, threatened, and subjected to offensive conduct by Defendant's employees," recites in paraphrase the elements of premises liability, and concludes that "Defendant owed a duty to Plaintiff not to cause harm and damage to her as an invitee at its hospital." *See* Am. Compl. 1-2. Had Plaintiff attempted to define Defendant's employees' conduct as a "condition on the premises," her claim would fail because "a possessor of land [may be] subject to liability for *physical harm* caused to his invitees by a *condition of the land*." *Corbin v. Safeway Stores, Inc.* 648 S.W.2d 292, 295 (Tex. 1983) (quoting Restatement (Second) of Torts § 343 (1965)) (emphasis added); *accord Bustamante v. Gonzalez*, No. 04-09-00481-CV, 2010 WL 2298841, at *4 (Tex. App. June 9, 2010) (citation omitted); *Strunk v. Belt Line Road Realty Co*., 225 S.W.3d 91, 100 (Tex. App. 2005) (citation omitted). Nowhere does Plaintiff so much as imply that she suffered any physical harm due to Defendant's employees' alleged misconduct, or that the harm she suffered was the result of a condition on the land. As such, her premises liability claim consists of nothing more than "labels and conclusions," and it must be dismissed. *See Twombly*, 550 U.S. at 555.

### d.    29 U.S.C. § 660

Plaintiff alleges that Defendant and its employees violated 29 U.S.C. § 660 by "retaliating against Plaintiff for reporting poor patient care, violations of regulations and deficits in clinical safety to the proper authorities." 29 U.S.C. § 660 is a section of the Occupational Safety and Health Act (the "Act") which, in pertinent part, prohibits discharging or discriminating against any employee for exercising any right afforded by the Act. *Id*. § 660(c)(1). An employee who believes he has been discharged or discriminated against in violation of that prohibition may, within thirty days of the violation, file a complaint with the Secretary of Labor (the "Secretary"). *Id*. § 660(c)(2). The Secretary must investigate the complaint, and, if he

determines that the relevant provisions of the Act have been violated, he must bring an action in federal court against the perpetrator of the prohibited discrimination. *Id.*

The Fifth Circuit has held that because the Act permits only the Secretary to bring an action in response to a violation of the Act's anti-retaliation provision, the Act does not create a private right of action. *See George v. Aztec Rental Ctr.*, 763 F.2d 184, 186 (5th Cir. 1985) (holding that "there is no private cause of action under federal law for a private employer's retaliatory discharge of an employee contrary to [§ 660]"); *Martinez v. DuPont Powder Coatings USA, Inc*., Civil Action No. H-06-1449, 2006 WL 1789057, at *2 (S.D. Tex. June 26, 2006). Because there is no private right of action under § 660, Plaintiff's allegation that Defendant violated § 660 must be dismissed for failure to state a claim upon which relief can be granted.[7]

### e.    10 U.S.C. § 2409

Plaintiff asserts for the first time in her Response that she

> was the employee of a government contractor [and] [a]s such she has an absolute right to file complaints against federal employees. Under 10 U.S.C. §2409, Plaintiff is entitled to protection from reprisal for disclosure of information relating to poor patient care at [WBAMC]. Plaintiff has complied with the statute and now brings this Whistle Blower retaliation action.

Resp. 8.

The Court understands Plaintiff to assert a cause of action for the violation of 10 U.S.C. § 2409.

Generally, "[a]llegations outside of the Petition may not be considered by the court" on a motion to dismiss. *Renfrow v. CTX Mortg. Co., LLC*, Civil Action No. 3:11-CV-3132-L, 2012 WL 3582752, at *4 (N.D. Tex. Aug 20, 2012) (citing *St. Paul Ins. Co. v. AFIA Worldwide Ins. Co.,* 937 F.2d 274, 279 (5th Cir. 1991)). That said, when a plaintiff's response to a motion to dismiss contains new allegations, the court should treat the response as a motion to amend the

---

[7] Though the Court dismisses Plaintiff's § 660 claim for the above-stated reason, the Court additionally notes that the United States is apparently not subject to suit under this provision. *See* 29 U.S.C. § 652(4)-(6).

pleadings. *See Stover v. Hattiesburg Pub. Sch. Dist.*, 549 F.3d 985, 989 n.2 (5th Cir. 2008)

(citing, *inter alia*, *Cash v. Jefferson Assocs., Inc*., 978 F.2d 217, 218 (5th Cir. 1993)) (holding

that it is proper for district courts to treat new claims raised in response to dispositive motions as

motions to amend the pleadings).

 Assuming without deciding that Plaintiff may amend her pleading to allege a violation of

§ 2409, she fails to state a claim upon which relief can be granted. Section 2409 prohibits

retaliation against employees of defense contractors who report misconduct related to

Department of Defense contracts, or any "substantial and specific danger to public health or

safety," to certain specified people. *See* 10 U.S.C § 2409(a)(1). Employees who believe they

were subject to retaliation in violation of the statute may file a complaint with the Inspector

General of the Department of Defense, who must investigate the complaint and submit a report

on the findings of the investigation to the head of the agency. *See id*. § 2409(b). The head of the

agency must then determine whether to deny or grant relief, which can consist of, for instance,

ordering the contractor to abate the reprisal. *See id*. § 2409(c)(1). Only if the head of the agency

fails to issue an order within a certain period of time, or issues an order denying relief, "the

complainant shall be deemed to have exhausted all administrative remedies with respect to the

complaint, and the complainant may bring a de novo action at law or equity *against the*

*contractor* to seek compensatory damages and other relief available under this section in the

appropriate district court of the United States." *Id*. § 2409(c)(2) (emphasis added).

 Here, Plaintiff has not submitted a complaint to the Inspector General of the Department

of Defense, and the other administrative prerequisites to filing suit therefore remain unfulfilled.

*See* 10 U.S.C. 2409(c)(2). Her letter to a member of the United States Congress, *see* Resp., Ex.

A, might be the sort of report that triggers § 2409's protection against reprisals, but only a

complaint to the Inspector General triggers the statute's private right of action.[8] *See* 10 U.S.C. §2409(b)-(c). Moreover, § 2409 allows for suit only "against the contractor" that carried out the prohibited reprisal. *Id*. § 2409(c)(2). Though Plaintiff was employed by a contractor, the only defendant in the Case is the United States, which is not subject to suit under § 2409 because it is not a contractor. *See Manion v. Spectrum Healthcare Res.*, --- F. Supp. 2d ----, 2013 WL 4014976, at *4 (E.D.N.C. Aug. 6, 2013). Plaintiff has not sued any contractor in the Case.  The Court therefore dismisses Plaintiff's cause of action for the violation of 10 U.S.C. § 2409 because she fails to state a claim upon which relief can be granted.

### f. Hostile work environment and retaliation

Plaintiff alleges that Defendant "creat[ed] a hostile work environment in the hospital" and that "through continued biased interventions that ostracized the Plaintiff, a hostile work environment was created." Am. Compl. 3, 6. Plaintiff also alleges that Defendants' employees "set forth a plan of retaliation by severely limiting her patient contact" and "further retaliated by causing the staff on 11 West to ostracize her."  Am. Compl. 5, 6. The Court understands Plaintiff to attempt to assert causes of action for retaliation and hostile work environment pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, and/or the Texas Commission on Human Rights Act ("TCHRA"), Texas Labor Code §§ 21.001, *et seq.*

### i. Title VII

Title VII generally prohibits private employers from discriminating against employees on the basis of race, color, religion, sex, or national origin. 42 U.S.C. 2000e-2(a). Though the

---

[8] Section 2409 was amended in 2008 to include a private right of action. *See* Act of Jan. 8, 2008, Pub. L. No. 110-181, 122 Stat 3. Thus, Defendant's argument that the statute does not afford a private right of action is incorrect, and the case she cites in support of that proposition is no longer good law. Based upon the Court's research, the only case that directly addresses the private right of action under the current version of the statute is *Manion v. Spectrum Healthcare Res.*, --- F. Supp. 2d ----, 2013 WL 4014976, at *4 (E.D.N.C. Aug. 6, 2013).

United States is not subject to Title VII in the first instance, *see id*. § 2000e(b), a separate

provision mandates that all personnel actions affecting certain federal employees be made free

from such discrimination.[9] 42 U.S.C. § 2000e-16(a). Title VII also generally outlaws retaliating

against private employees for opposing any practice prohibited by Title VII, making a charge

under Title VII, or participating in any manner in any proceeding under Title VII. *See id*. §

2000e-3(a). Although the sections of Title VII that are applicable to federal employees do not

expressly prohibit retaliation or reference the general anti-retaliation provision in § 2000e-3(a),

"it is clear that Congress incorporated the protections against retaliation in its enactment of §

2000e–16," such that "[i]n short, § 2000e–16 bars retaliation" against federal employees as well.

*Brazoria Cnty., Tex. v. Equal Emp't Opportunity Comm'n*, 391 F.2d 685, 690 (5th Cir. 2004).

Federal employees who believe they were subject to unlawful discrimination or retaliation may,

under some circumstances and after fulfilling certain prerequisites, file suit in federal court. *See*

42 U.S.C. §§ 2000e-5; 2000e-16.

   As an initial matter, Plaintiff may only sue Defendant under Title VII if she was

Defendant's employee. *See id*. § 2000e-16(a); *Luna v. Roche*, 89 F. App'x 878, 881 (5th Cir.

2004) ("[E]mployment discrimination claims [under Title VII] require the existence of an

employer-employee relationship."). Although Plaintiff was employed by Spectrum, not by

Defendant, entities that employ contractors may have an employment relationship for Title VII

purposes with the contractor's employees. *See Deal v. State Farm Cnty. Mut. Ins. Co. of Tex.*, 5

F.3d 117, 118-19 (5th Cir. 1993); *Garcia v. Shell Oil Co.*, Civil Action No. H-08-1734, 2009 WL

2047898, at *4-5 (S.D. Tex. July 10, 2009).

---

[9] Among the employees included in this provision are those "employed in military departments" such as the Department of the Army. *See id*; 5 U.S.C. § 102. To the extent Plaintiff was an employee of Defendant, she was an employee of the Department of the Army, which operates WBAMC. *See* Resp., Ex. B.

To determine whether an employment relationship exists within the meaning of Title VII, the Fifth Circuit applies a "hybrid economic realities/common law control test." *Deal*, 5 F.3d at 118-19 (citation omitted). "The right to control an employee's conduct is the most important component of this test." *Id*. (citation omitted). The right to control depends upon "whether the alleged employer has the right to hire and fire the employee, the right to supervise the employee, and the right to set the employee's work schedule. *Id*. (citation omitted). The "economic realities" component of the test focuses on "whether the alleged employer paid the employee's salary, withheld taxes, provided benefits, and set the terms and conditions of employment." *Id*. (citation omitted). The same analysis applies when the alleged employer is the United States. *See Mares v. Marsh*, 777 F.2d 1066 (5th Cir. 1985).

In this case, the Court lacks sufficient information to apply the *Deal* test to determine whether Plaintiff had an employment relationship with Defendant. Because Plaintiff's employment discrimination claims fail in any event, the Court assumes without deciding that Plaintiff was Defendant's employee for Title VII purposes.[10]

Federal employees wishing to file suit under Title VII must clear two administrative hurdles: they must first consult an agency Equal Employment Opportunity counselor, after which they must file a formal complaint with the Equal Opportunity Office of the agency. *See* 29 CFR §§ 1614.105-106; *Pacheco v. Mineta*, 448 F.3d 783, 786-88 (5th Cir. 2006); *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002). The employee may sue only if they are aggrieved

---

[10] Plaintiff stresses in her Response that she was never an employee of the United States, and that "she worked exclusively for Spectrum." Resp. 1. Defendant argues that by this statement, Plaintiff "appears to withdraw her employment discrimination claim." Reply. 2 n.3. However, Plaintiff does not delve into the legal implications of her claim that she "worked exclusively for Spectrum," and does not otherwise explicitly disavow or retract her hostile work environment and retaliation claims. Because it is possible that Plaintiff might qualify as a Title VII employee under the *Deal* test, the Court declines to construe Plaintiff's statement as a withdrawal of her employment discrimination claims.

by the final disposition of their complaint or by a failure to take action on their complaint within

a specified period of time. "Administrative remedies are exhausted when the federal agency

gives notice of its final action, or when 180 days have passed since the initial formal charge was

filed with the agency." *Thomas v. Napolitano*, 449 F. App'x 373, 374-75 (5th Cir. 2011) (citing

42 U.S.C. § 2000e-16(c); *Martinez v. Dep't of U.S. Army,* 317 F.3d 511, 513 (5th Cir. 2003);

*Munoz v. Aldridge,* 894 F.2d 1489, 1493-94 (5th Cir. 1990)).

Plaintiff does not allege that she pursued or exhausted any pertinent administrative

remedies, whether consulting an agency counselor or filing a formal complaint. The Court must

therefore dismiss her Title VII claim because she has failed to exhaust her administrative

remedies. *See Pacheco*, 448 F.3d at 787-88; 42 U.S.C. § 2000e-16(c).[11]

Moreover, had Plaintiff exhausted her administrative remedies, her employment

discrimination claims would fail on the merits.

"A hostile work environment claim . . . necessarily rests on an allegation that an

employer has created a working environment heavily charged with discrimination." *Raj. v. La.

State Univ.*, 714 F.3d 322, 330-31 (5th Cir. 2013) (citing *Rogers v. EEOC,* 454 F.2d 234, 238

(5th Cir. 1971) (quotation marks omitted). Such a claim is properly dismissed when the plaintiff

"does not allege any facts that link the alleged harassment" with their membership in a protected

group. *Id*. The Amended Complaint does not allege any connection between the mistreatment

---

[11] "There is disagreement in this circuit on whether a Title-VII prerequisite, such as exhaustion, is merely a
prerequisite to suit, and thus subject to waiver and estoppel, or whether it is a requirement that implicates subject
matter jurisdiction." *Pacheco*, 448 F.3d at 788 n.7 (collecting and comparing cases). Because waiver and estoppel
are not at issue here, the Court need not determine whether Plaintiff's failure to exhaust her administrative remedies
deprives the Court of subject matter jurisdiction. *See id*. (noting that "[b]ecause neither party has a winning waiver
or estoppel argument, we need not take sides in this dispute").

Plaintiff suffered and her membership in any protected group.[12] As such, she "has not pled a claim of hostile work environment that raises [her] right to relief above the speculative level." *Id*. (quotation marks and citation omitted).

Similarly, a valid retaliation claim requires that the plaintiff demonstrate, among other things, that she engaged in activity protected by Title VII. *Carter v. Target Corp*., 541 F. App'x 413, 417 (5th Cir. 2013) (citing *Evans v. City of Hous.,* 246 F.3d 344, 352 (5th Cir. 2001) (quotation marks omitted)). "An individual engaged in a protected activity if she: (i) made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII, or (ii) opposed any practice made an unlawful employment practice by Title VII." *Id*. at 417-18 (citing *Haynes v. Pennzoil Co.,* 207 F.3d 296, 299 (5th Cir. 2000)) (quotation marks omitted); *see* 42 U.S.C. § 2000e–3(a). Here, Plaintiff did make not a formal complaint or participate in any proceeding under Title VII. Though she may have opposed certain practices at WBAMC or protested Defendant's employees' treatment of her, nowhere does Plaintiff so much as imply that she opposed a discriminatory employment practice made unlawful by Title VII. "A vague complaint that does not reference a discriminatory employment practice does not constitute a protected activity." *Carter*, 541 F. App'x at 418 (affirming dismissal of retaliation claim where plaintiff "did not make *any* reference to a discriminatory

---

[12] Plaintiff attached to her Response a letter she sent to a United States Congressman in 2011. In that letter, she states that she is a "62 year old female physician, born and raised in Havana, Cuba" and that she is the "most senior physician on the unit." Resp., Ex. A at 2-3. She alleges in the letter that Terhakopian's "age (38) and his birth origin, Iran (Armenia) are significant factors in his actions against me." *Id*. at 2. Plaintiff appears to reference her own age, gender, and national origin by way of background; nowhere in the letter, let alone in her pleadings, does she imply that she was mistreated due to her membership in any of those groups. Her allegation that Terhakopian's age and national origin caused him to mistreat her is not relevant, as Title VII is concerned with discrimination due to an employee's protected status, not with misbehavior caused entirely by the wrongdoer's own age or background. *See* 42 U.S.C. § 2000e-16. Thus, Plaintiff's statements in the letter do not suffice to link the alleged harassment with Plaintiff's membership in a protected group.

practice"). Because Plaintiff does not allege that she engaged in a protected activity, she fails to state a claim for retaliation upon which relief can be granted. *See id*.

### ii.     TCHRA

To the extent Plaintiff asserts a TCHRA claim instead of or in addition to her apparent Title VII claim, it fails either because it is barred by Title VII or because Plaintiff has not exhausted her administrative remedies.

Title VII creates an "exclusive, pre-emptive administrative and judicial scheme for the redress of federal employment discrimination." *Brown v. Gen. Serv. Admin.*, 425 U.S. 820, 829-35 (1976). "[T]itle VII provides the exclusive remedy for employment discrimination claims raised by federal employees." *Jackson v. Widnall*, 99 F.3d 710, 716 (5th Cir. 1996) (citations omitted). "[W]hen a complainant against a federal employer relies on the same facts to establish a Title VII claim and a non-Title VII claim, the non-Title VII claim is not sufficiently distinct to avoid preemption." *Pfau v. Reed*, 125 F.3d 927, 932 (5th Cir. 1997), *vacated on other grounds,* 525 U.S. 801 (1998), *pertinent holding reinstated on remand,* 167 F.3d 228, 229 (5th Cir. 1999) (per curiam) (citations omitted). Thus, so long as Plaintiff is a federal employee, Title VII preempts her from establishing any other claim – such as a state law claim under the TCHRA – using the same facts she relies upon to establish a Title VII claim. *See Pfau*, 125 F.3d at 932-34; *Pickett v. Chertoff*, No. H-06-1092, 2007 WL 43785, at *7 (S.D. Tex. Jan. 5, 2007) (concluding that federal employee's claims under "state law are preempted by Title VII because they arise out of the same facts as the employment discrimination and retaliation claims that she has asserted under Title VII").

As discussed above, the Court assumed without deciding that Plaintiff was Defendant's employee for Title VII purposes. To the extent Plaintiff asserts a TCHRA claim for "hostile work

environment" and "retaliation," she surely bases it upon the same skeletal allegations as her Title VII claim. "[T]itle VII provides the exclusive remedy for employment discrimination claims raised by federal employees." *Jackson*, 99 F.3d at 716. Thus, because Plaintiff uses the "same facts to establish a Title VII claim and a non-Title VII claim, the non-Title VII claim is not sufficiently distinct to avoid preemption." [13] *Pfau*, 125 F.3d at 932. However, because it is possible that Plaintiff is not a federal employee for Title VII purposes, and that her TCHRA claim may not be preempted, the Court briefly explains why her TCHRA claim fails even if it is not barred by Title VII.

Similar to Title VII, the TCHRA prohibits discrimination based on an employee's race, color, disability, religion, sex, national origin, or age. Tex. Lab. Code Ann. § 21.051(a); *see Brown v. CB&I, Inc.*, No. 09-12-521-CV, 2014 WL 172413, at *4 n.2 (Tex. App. Jan. 16, 2014) ("The TCHRA is modeled after federal civil rights law."). The TCHRA establishes an administrative exhaustion regime similar to Title VII. *See* Tex. Lab. Code Ann. §§ 21.201-11; *Czerwinski v. Univ. of Tex. Health Sci. Ctr. Sch. Of Nursing*, 116 S.W.3d 119, 122 (Tex. App. 2002) (citing *Schroeder v. Tex. Iron Works, Inc.,* 813 S.W.2d 483, 485 (Tex. 1991)). An aggrieved employee may file suit only after exhausting the required administrative remedies. *Jones v. Grinnell Corp.*, 235 F.3d 972, 975 (5th Cir. 2001). Specifically, an employee must first file a complaint with either the Texas Workforce Commission or the EEOC, and may sue only if the relevant agency dismisses the complaint or does not act upon it within a specified period of

---

[13] If any of Plaintiff's other causes of action were based upon the same facts underlying her hostile work environment and retaliation claims, those causes of action – and not merely her TCHRA claim – might also be preempted. *See Pfau*, 125 F.3d at 932. However, because, as the Court explains below, Plaintiff has failed to establish a viable Title VII claim, and because her vague allegations leave unclear whether the same nucleus of facts underlies all her claims, the Court concludes for the purpose of ruling on the Motion that Title VII does not preempt her other claims.

time. *See, e.g.*, *Cisneros v. DAKM, Inc.*, No. 7:13-CV-556, 2014 WL 258755, at *2 (S.D. Tex.

Jan. 23, 2014) (citing, *inter alia*, *Schroeder*, 813 S.W.2d at 485).

Plaintiff does not allege that she has filed a complaint with the Texas Workforce

Commission or the EEOC, or that she has otherwise exhausted her administrative remedies. "If a

complainant fails to exhaust his state administrative remedies, the Texas Human Rights Act

jurisdictionally bars this court from hearing the case." *Grinnell Corp.*, 235 F.3d at 975; *see*

*Manuel v. Sanderson Farms, Inc.*, 90 F. App'x 714, 717 (5th Cir. 2004) (holding that the district

court lacked subject matter jurisdiction over claims that were barred by the TCHRA's exhaustion

requirement). Therefore, in the event that Plaintiff's TCHRA claim is not barred by Title VII, the

Court must nevertheless dismiss that claim for lack of subject matter jurisdiction because

Plaintiff has failed to exhaust her state administrative remedies. *See id*.

### g. Negligence

Plaintiff alleges that Defendant was negligent under the following six theories, which the

Court reorders for analytical convenience,  by: (1) "allowing its employees and agents to inflict

emotional distress on its invitees;" (2) "creating a hostile work environment;" (3) "creating an

environment that allowed professional harassment;" (4) "failing to supervise its employees and

agents;" (5) "failing to secure the hospital and provide a safe work environment;" and (6)

"failing to put into place and maintain proper employee procedures." Am. Compl. 3.

 "Under the FTCA, the United States is liable in damages only if a private person would

be liable for the same allegedly negligent act or omission under the laws of the state within

which the act or omission occurred." *Skipper v. United States*, 1 F.3d 349, 352 (5th Cir. 1993)

(citations omitted) (applying Texas negligence law to claim under the FTCA where the events in

question occurred in Texas). Because Defendant's alleged negligence occurred in Texas, the

Court applies Texas law to Plaintiff's negligence claims. *See id*. "A cause of action for negligence in Texas requires three elements. There must be a legal duty owed by one person to another, a breach of that duty, and damages proximately caused by the breach." *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002). For the reasons explained below, Plaintiff's negligence allegations fail because they are barred in part by the FTCA, and because they otherwise do not state a claim upon which relief can be granted.

### i. Negligently "allowing its employees and agents to inflict emotional distress on its invitees"

As explained in the Court's discussion of Plaintiff's tortious interference with contract and IIED allegations, claims against the United States are barred by the FTCA if they arise out of any of the intentional torts listed in 28 U.S.C. § 2680(h). A claim "arises out of" an excepted tort if the conduct upon which it is based constitutes an excepted tort. *See Truman*, 26 F.3d at 594. A plaintiff may not avoid the § 2860(h) bar by "framing his complaint in terms of the government's negligent failure to prevent the excepted harm." *Id*. at 594-95 (citing *McNeily v. United States*, 6 F.3d 343, 347 (5th Cir. 1993)). Such a negligence claim "arises out of" the excepted intentional tort, and is therefore barred. *See id*. (citing *Garcia v. United States*, 776 F.2d 116, 118) (5th Cir. 1985)).

Plaintiff's claim that Defendant negligently allowed its employees to inflict emotional distress upon her self-evidently arises out of her IIED claim. As explained above, Plaintiff's IIED claim is barred by the FTCA to the extent it arises out of Defendant's employees' false statements about Plaintiff to others. Plaintiff's negligence claim based on that libelous or slanderous conduct is likewise barred by the FTCA. *See id*. at 594-95. As further explained above, Plaintiff fails to state a claim for IIED on the basis of Defendant's employees' other

conduct. Her negligence claim, which is derivative of that conduct, therefore fails as well. Additionally, "Texas does not recognize a cause of action for negligent infliction of emotional distress." *Tolbert v. Otstott*, No. 05-12-00024-CV, 2013 WL 3389041, at *2 (Tex. App. July 3, 2013) (citing *Boyles v. Kerr*, 855 S.W.2d 593, 594 (Tex. 1993)). Plaintiff fails to demonstrate that negligently allowing others to inflict emotional distress is nonetheless somehow actionable. The Court therefore dismisses this claim.

### ii.     Negligently "creating a hostile work environment"

To the extent this claim is based upon Plaintiff's Title VII or TCHRA hostile work environment claims, those claims fail for the reasons explained above. Her claim that Defendant negligently created the hostile work environment therefore fails as well.

To the extent Plaintiff complains more abstractly of unwarranted hostility toward her, there is no recognized tort under Texas law for negligently creating a hostile work environment by allowing an employee's coworkers to mistreat her; the Texas "hostile work environment" cases the Court has identified invariably sound in employment discrimination under the TCHRA. *Cf. Udoewa v. Plus4 Credit Union*, No. H-08-3054, 2009 WL 1856055, at *4 (S.D. Tex. June 29, 2009) ("There is simply no such thing as . . . negligent harassment . . . . There have been no cases recognizing a claim for negligent harassment.") (quotation marks and citations omitted). More generally, Plaintiff has not adequately pleaded the elements of a cause of action for negligence, namely, that Defendant owed her a duty not to allow "a hostile work environment," that Defendant breached that duty, and that Defendant's breach of that duty proximately caused Plaintiff damages. *See D. Houston, Inc.*, 92 S.W.3d at 454. Plaintiff's allegation that Defendant negligently created a hostile work environment must therefore be dismissed for failure to state a claim upon which relief can be granted.

### iii.     Negligently "creating an environment that allowed professional harassment"

This allegation is functionally duplicative of Plaintiff's allegation that Defendant negligently created a hostile work environment, and it must therefore also be dismissed for failure to state a claim.

### iv.     Negligent failure to supervise

 "The elements of a claim for negligent supervision, like all negligence claims, are (1) the defendant owed a legal duty to the plaintiff, (2) the defendant breached that duty, (3) the plaintiff suffered damages, and (4) the damages were proximately caused by the defendant's breach." *Latimer v. Mem'l Hermann Hosp. Sys.*, No. 14—09-00925-CV, 2011 WL 175504, at \*3 (Tex. App. Jan. 20, 2011) (citation omitted). "To prevail on a claim for negligent hiring or supervision, the plaintiff is required to establish not only that the employer was negligent in hiring or supervising the employee, but also that the employee committed an actionable tort against the plaintiff." *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 801 n.2 (Tex. 2010) (quoting *Brown v. Swett & Crawford of Tex., Inc.*, 178 S.W.3d 373, 384 (Tex. App. 2005)).

Plaintiff's claim fails because she has not adequately pleaded that Defendant's employees committed an actionable tort against her. To the extent she alleges that Defendant's employees libeled or slandered her, those claims are barred by the FTCA, as are any claims arising from the libel or slander. *See* 28 U.S.C. § 2680(h); *Truman,* 26 F.3d at 594-95. A plaintiff may not avoid the § 2680(h) bar by "framing his complaint in terms of the government's negligent failure to prevent the excepted harm." *Truman,* 26 F.3d at 594-95. Hence, any negligence claim arising from the alleged libel or slander is likewise barred. To the extent Plaintiff alleges that Defendant's employees intentionally inflicted emotional distress on her, her cause of action for

36

IIED is barred in part by the FTCA because it arises out of libel or slander, and it otherwise fails

to state a claim for which relief can be granted, both as explained above. Plaintiff does not

identify any other actionable tort that Defendant's employees may have committed. Because

Plaintiff fails to adequately plead that Defendant's employees committed an actionable tort, her

claim for negligent supervision must be dismissed. *See Waffle House*, 313 S.W.3d at 801 n.2

(citation omitted).

> **v.      Negligently "failing to secure the hospital and provide a safe work environment"**

This claim is duplicative of Plaintiff's premises liability claim and fails for the same

reasons discussed above; Plaintiff simply has not pleaded in any fashion that WBAMC was

insecure or unsafe.

> **vi.     Negligently "failing to put into place and maintain proper employee procedures"**

Plaintiff fails to allege how Defendant owed her a duty to put "put into place and

maintain proper employee procedures," how that duty was breached, and how that breach

proximately caused her damages. *See D. Houston, Inc.*, 92 S.W.3d at 454. As with the rest of

Plaintiff's negligence allegations, it must therefore be dismissed for failure to state a claim upon

which relief can be granted.

> **C.     Leave to Amend**

Federal Rule of Civil Procedure 15(a)(2) mandates that courts should freely give

plaintiffs leave to amend their pleadings when justice so requires. Fed. R. Civ. P. 15(a)(2). "This

standard evinces a bias in favor of granting leave to amend. The policy of the Federal Rules is to

permit liberal amendment."[14] *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1175 (5th Cir. 2006)

(quotation marks and citation omitted). Thus, "[w]hen a plaintiff's complaint fails to state a

claim, the court should generally give the plaintiff a chance to amend the complaint under Rule

15(a) before dismissing the action with prejudice, unless it is clear that to do so would be futile."

*Lopez v. Sovereign Bank, N.A.*, Civil Action No. H-13-1429, 2014 WL 1315834, at *3 (S.D. Tex.

Mar. 31, 2014) (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d

305, 329 (5th Cir. 2002)); *see Foman v. Davis*, 371 U.S. 178, 182 (1962) (noting that a proper

reason to deny leave to amend is "futility of amendment").

The Court holds that it would be futile for Plaintiff to replead the following claims, and

accordingly dismisses them with prejudice:

Plaintiff may not amend any claims that arise out of interference with contract rights

because such claims are barred by the FTCA.

Plaintiff may not amend her IIED claim to the extent it arises out of intentional torts

excepted by the FTCA, such as libel and slander, because such claims are barred by the FTCA.

Similarly, Plaintiff may not amend her negligence claims to the extent they arise out of libel or

slander.

Plaintiff may not amend her premises liability claim because she did not suffer physical

harm due to a condition of the land. For the same reason, Plaintiff may not amend her claim that

Defendant negligently failed to secure the hospital and provide a safe work environment.

---

[14] Because Plaintiff's deadline to move to amend the pleadings has passed, *see* Scheduling Order, ECF No. 11, she must first demonstrate that there is good cause to amend the scheduling order in order to successfully move to amend her pleading under "the more liberal standard of Rule 15(a)." *Hawthorne Land Co. v. Occidental Chem. Corp.*, 431 F.3d 221, 227 (5th Cir. 2005) (citation omitted); *see* Fed. R. Civ. P. 16(b)(4). The Court notes that Defendant filed the Motion well after Plaintiff's deadline to move to amend the pleadings, and that Plaintiff's burden under Rule 16 therefore may not be onerous.

Plaintiff may not amend her claim under 29 U.S.C. § 660 because that statute does not provide for a private right of action.

Plaintiff may not amend her claim under 10 U.S.C. § 2409 because the United States is not subject to suit under that statute.

By contrast, it would not necessarily be futile for Plaintiff to attempt to replead her IIED allegation and her remaining negligence allegations on the basis of conduct which does not give rise to an excepted intentional tort under the FTCA. It would likewise not be futile for Plaintiff to amend her employment discrimination allegations to attempt to demonstrate that she has exhausted her administrative remedies and can otherwise state a claim for hostile work environment or retaliation under Title VII or the TCHRA. Plaintiff may therefore move for leave to amend those claims.

## III.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss, ECF No. 13, is **GRANTED**. Plaintiff's claims alleging the following are **DISMISSED WITH PREJUDICE**: tortious interference with contract; intentional infliction of emotional distress, to the extent it is based on an excepted tort under the FTCA; premises liability; negligence, to the extent it is based on an excepted tort under the FTCA or arises from premises liability; and any claim alleging a violation of 29 U.S.C. § 660 or 10 U.S.C. § 2409.

The following claims are **DISMISSED WITHOUT PREJUDICE**: intentional infliction of emotional distress, to the extent it is not barred by the FTCA; negligence, to the extent it is not barred by the FTCA and does not arise from premises liability; and employment discrimination under the applicable statute.

The Court **ORDERS** Plaintiff to file any motion for leave to amend her pleadings within thirty days.

**SO ORDERED**.

SIGNED this 4th day of May, 2014.

KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE