IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| CRISTINA CRUZ GROST, M.D., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | EP-13-CV-158-KC |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Defendant. | § | |

## ORDER

On this day, the Court considered Defendant's Motion for Summary Judgment ("Motion"), ECF No. 32, in the above-captioned case (the "Case"). For the reasons set forth below, the Motion is **GRANTED**.

## I.  BACKGROUND

Unless otherwise noted, the following facts are undisputed.[1]

From 2006 to 2012, Plaintiff Cristina Cruz Grost ("Plaintiff") worked as a psychiatrist for Spectrum Healthcare Resources ("Spectrum") at the inpatient unit of William Beaumont Army Medical Center ("Medical Center") in El Paso, Texas. *See* Proposed Undisputed Facts 2 ("Proposed Facts"), ECF No. 33; *see also* Jan. 20, 2015, Dep. of Cristina Cruz Grost 17 ("Grost Deposition"), Mot. Ex. A, ECF No. 32-3.[2] For the first four years of that employment, until 2010,

---

[1] On March 9, 2015, Defendant filed its Proposed Undisputed Facts ("Proposed Facts"), ECF No. 33. Pursuant to the Court's May 1, 2012, Standing Order Regarding Motions for Summary Judgment, Plaintiff was required to file a "Response to Proposed Undisputed Facts," thereby either admitting or denying in separate numbered paragraphs each of the facts asserted by Defendant. *See* May 1, 2012, Standing Order Regarding Mots. for Summ. J. at (a)(2). Plaintiff failed, however, to file its "Response to Proposed Undisputed Facts" as required by the Court's standing order. *See* Pl.'s Resp. to Def.'s Mot. for Summ. J., ECF No. 34. As a result, the Court deems each of the factual allegations in the Proposed Facts admitted by Plaintiff. *See id.* at (a)(1).

[2] The Court's citations to documents filed in the Case refer to the page numbers superimposed upon them by the Court's electronic docketing system.

1

Plaintiff and Dr. Levandowski ("Levandowski") were the only psychiatrists for a seventeen bed ward at the Medical Center. Proposed Facts 2.

Beginning in 2010, various personnel changes took place at the Medical Center. Specifically, at some time in 2010, Levandowski became the Chief of Behavorial Health. *Id.* In February 2010, Dr. Moruzzi ("Moruzzi") began serving as the Deputy Chief, Department of Behavorial Health. *Id.* at 3. A month later, in March of 2010, Dr. Tulla ("Tulla") began providing psychiatric care in the same ward as Plaintiff. *Id.* at 2. Finally, at some time between February and June 2010, Dr. Terhakopian ("Terhakopian") assumed duties as Chief of Inpatient Psychiatry. *Id.* at 3.

Plaintiff states that, beginning in 2010, a series of her co-workers' actions caused her emotional distress. Specifically, as to Moruzzi, Plaintiff states that after Tulla and Moruzzi arrived at the Medical Center, Moruzzi began having parties to which he would invite everyone except Plaintiff. Proposed Facts 3; Grost Dep. 19. Though not invited to social gatherings, Plaintiff was not excluded from any professional meetings. Proposed Facts 3; Grost Dep. 46. Plaintiff further states that Moruzzi interfered with Plaintiff's care for her patients when Plaintiff felt no intervention was required. Proposed Facts 3; Grost Dep. 19. Moruzzi's "interference" amounted to emails correcting or directing Plaintiff's performance and comments about the management of Plaintiff's cases. Proposed Facts 3; Grost Dep. 19. According to Plaintiff, Moruzzi's interventions were the result of ill will against Plaintiff because Levandowski did not leave Moruzzi in charge of the unit during Levandowski's deployment to Afghanistan. Proposed Facts 3-4; Grost Dep. 20.

Plaintiff also states that a number of Terhakopian's actions caused her emotional distress. For instance, Plaintiff claims that Terhakopian once refused to shake Plaintiff's hand, *see* Proposed Facts 4; Grost Dep. 73, called Plaintiff "neurotic," *see* Proposed Facts 4; Grost Dep. 25, and on one occasion told Plaintiff to stop thinking about an unknown matter. *See* Proposed Facts 4; Grost Dep. 25. Plaintiff further states that Terhakopian once yelled at Plaintiff to "park [her] ethics and [her] morals at the door." Proposed Facts 5; Grost Dep. 24. Furthermore, Plaintiff states that Terhakopian

2

assigned Plaintiff too few cases, and then acted in a loud and disrespectful manner toward Plaintiff for not seeing enough patients.  Proposed Facts 4-5; Grost Dep. 19, 29, 34; Decl. of Rosemary Marin 5 ("Marin Declaration"), Mot. Ex. E, ECF No. 32-17.  Because of these incidents, Plaintiff requested and received a "list of her deficiencies" from Terhakopian.  Proposed Facts 5; Grost Dep. 50, 68; Email from Cristina Cruz Grost to Artin Terhakopian (July 11, 2011), Mot. Ex. A-2, ECF No. 32-5.

On August 9, 2011, Levandowski emailed Plaintiff asking that she consider taking an open consultant position focusing on providing psychiatric consults to other wards at the Medical Center.  Proposed Facts 6; Email from Dale Levandowski to Cristina Cruz Grost (Aug. 9, 2011), Mot. Ex. A-4, ECF No. 32-7.  Subsequently, at some time on or around September 1, 2011, Plaintiff became the principal psychiatric consultant to the medical wards.  Proposed Facts 7.  Plaintiff states that her life at the Medical Center became completely unbearable shortly thereafter; and, as a result, Plaintiff submitted her resignation on November 28, 2011.  Proposed Facts 8; Letter from Cristina Cruz Grost to Dale Levandowski (Nov. 28, 2011), Mot. Ex. A-10, ECF No. 32-13.  Nonetheless, Plaintiff suffered no physical harm and sought no medical or mental health treatment as a result of working at the Medical Center.  Proposed Facts 8; Grost Dep. 33, 49.

Plaintiff subsequently filed the Case on May 8, 2013.  *See* Pl.'s Original Compl., ECF No. 1.  Fifteen days later, on May 23, 2013, Plaintiff filed her first amended complaint, asserting causes of action against Defendant for tortious interference with contractual relations, breach of contract, libel, slander, intentional infliction of emotional distress, premises liability, violations of 29 U.S.C. § 660, retaliation and hostile work environment under federal and/or state antidiscrimination laws, and six separate theories of negligence.  *See* Pl.'s First Am. Compl. 1-7, ECF No 4.  On May 5, 2014, however, the Court dismissed with prejudice Plaintiff's claims for tortious interference with contract; intentional infliction of emotional distress, to the extent it was based on an excepted tort under the Federal Tort Claims Act ("FTCA"); premises liability; negligence, to the extent it was based on an

3

excepted tort under the FTCA or arose from premises liability; and any claim alleging a violation of 29 U.S.C. § 660 or 10 U.S.C. § 2409. *See* May 5, 2014, Order 39, ECF No. 18. The Court further dismissed Plaintiff's claims for intentional infliction of emotional distress, negligence, and employment discrimination without prejudice. *Id.* As a result, Plaintiff filed her second amended complaint on June 27, 2014. *See* Pl.'s Second Am. Compl., ECF No. 22. Though the allegations and causes of action in the Second Amended Complaint largely mirror those found in the First Amended Complaint, Plaintiff added factual allegations regarding her claim of intentional infliction of emotional distress based on the alleged abuse and harassment aimed at Plaintiff during her time as a psychiatrist at the Medical Center.

Defendant filed the Motion on March 9, 2015, seeking summary judgment on Plaintiff's intentional infliction of emotional distress claim. *See* Mot. Plaintiff filed her response to the Motion on March 19, 2015. *See* Pl.'s Resp. to Def.'s Mot. for Summ. J. ("Response"), ECF No. 34. Defendant in turn filed its reply to the Response on March 26, 2015. *See* Def.'s Reply to Pl.'s Resp. to Def.'s Mot. for Summ. J. ("Reply"), ECF No. 35.

## II.   DISCUSSION

### A.   Standard

A court must enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quoting *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (per curiam)). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ellison v. Software Spectrum, Inc.*, 85 F.3d 187, 189 (5th Cir. 1996).

"[The] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323; *Wallace v. Tex. Tech. Univ.*, 80 F.3d 1042, 1046-47 (5th Cir. 1996). To show the existence of a genuine dispute, the nonmoving party must support its position with citations to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials[,]" or show "that the materials cited [by the movant] do not establish the absence . . . of a genuine dispute, or that [the moving party] cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c).

The court resolves factual controversies in favor of the nonmoving party; however, factual controversies require more than "conclusory allegations," "unsubstantiated assertions," or "a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Further, when reviewing the evidence, the court must draw all reasonable inferences in favor of the nonmoving party, and may not make credibility determinations or weigh evidence. *Man Roland, Inc. v. Kreitz Motor Express, Inc.*, 438 F.3d 476, 478-79 (5th Cir. 2006) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). Thus, the ultimate inquiry in a summary judgment motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

B.      Analysis

Because Plaintiff's only remaining claim, intentional infliction of emotional distress, is brought against the United States of America, the applicable law is the FTCA.[3]  The FTCA waives the sovereign immunity of the United States, subject to several exceptions not applicable here, for personal injury "caused by the negligent or wrongful act or omission of any employee of the Government . . . under circumstances where . . . a private person[] would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 484 (2006) (quoting 28 U.S.C. § 1346(b)(1)).  Therefore, because the conduct underlying Plaintiff's intentional infliction of emotional distress claim occurred in El Paso, Texas, the Court applies Texas law in determining Defendant's potential liability.  *See id.*

In Texas, to prevail on a claim of intentional infliction of emotional distress, a plaintiff must prove that  "(1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the emotional distress that the plaintiff suffered was severe." *City of Midland v. O'Bryant*, 18 S.W.3d 209, 216 (Tex. 2000).  By its Motion, Defendant challenges Plaintiff's ability to prove the second and fourth elements of her claim.  *See* Mot. 7.  The Court addresses Defendant's arguments below.

### 1.      Plaintiff has not provided sufficient evidence to raise a genuine issue of fact as to whether the alleged conduct was extreme and outrageous

Defendant argues that "Plaintiff is unable to prove Defendant's conduct was extreme and outrageous" because Plaintiff's allegations "represent ordinary employment disputes" that "are

---

[3] Plaintiff has also alleged causes of action sounding in negligence which the Court had previously dismissed subject to repleading due to a dearth of supporting factual allegations.  *See* May 5, 2014, Order.  Because Plaintiff has not alleged any additional facts in her Second Amended Complaint regarding these negligence claims, to the extent these claims remain live, they are dismissed for the reasons explained in the May 5, 2014, Order.  *See id.*

6

inadequate to support a claim of intentional infliction of emotional distress." *Id.* at 10, 12. Plaintiff responds that Terhakopian's actions, taken as a whole, "are so all encompassing and severe, no reasonable person could be expected to endure [them] without undergoing unreasonable suffering," and, therefore are sufficiently extreme and outrageous to survive summary judgment. Resp. 6.

In analyzing a claim for intentional infliction of emotional distress, "[c]ourts must determine as a threshold matter whether 'the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery.'" *City of Midland*, 18 S.W.3d at 216-17 (quoting *Brewerton v. Dalrymple*, 997 S.W.2d 212, 216 (Tex. 1999)). To be extreme and outrageous, conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Mattix-Hill v. Reck*, 923 S.W.2d 596, 597 (Tex. 1996) (internal citations and quotations omitted). Further, "a claim for intentional infliction of emotional distress does not lie for ordinary employment disputes." *GTE S.W., Inc. v. Bruce*, 998 S.W.2d 605, 612 (Tex. 1999). In the workplace, "an employer must be able to supervise, review, criticize, demote, transfer, and discipline employees." *Id.* "Thus, to establish a cause of action for intentional infliction of emotional distress in the workplace, an employee must prove the existence of some conduct that brings the dispute outside the scope of an ordinary employment dispute and into the realm of extreme and outrageous conduct." *Id.* at 613. "Such extreme conduct exists only in the most unusual of circumstances." *Id.*

In support of its position that Plaintiff is unable to prove the requisite extreme conduct, Defendant cites to Plaintiff's admissions that her workload was not doubled, that she has no evidence indicating Defendant "intended to increase the risk of harm to any patients," and that Plaintiff did not commit any medical errors in her treatment. *See* Mot. 10-11; Grost Dep. 31; Pl.'s Resp. to Def.'s First Req. for Admis. of Facts 2, Mot. Ex. A-8, ECF No. 32-11. Based on these admissions, Defendant asserts that there is "no genuine issue that Plaintiff is unable to proffer evidence that Plaintiff was overloaded with work, that Defendant intended to create an increase[d] risk to patients,

7

or that patients were put into harm's way." Mot. 10.  Defendant then refers to eight other incidents in the record that Plaintiff believes demonstrate extreme and outrageous conduct: (1) Moruzzi intervening in Plaintiff's handling of her case load; (2) Terhakopian yelling at Plaintiff "to park [her] ethics and [her] morals at the door;" (3) Terhakopian telling Plaintiff to not think about an unknown matter; (4) Terhakopian refusing to shake Plaintiff's hand on a single occasion; (5) Terhakopian unfairly assigning cases between staff; (6) Terhakopian calling Plaintiff "neurotic" on a single occasion; (7) Terhakopian acting loudly and disrespectfully toward Plaintiff for not seeing enough patients; and (8) Terhakopian failing to ensure the inpatient ward functioned as smoothly as Plaintiff would have preferred.  *See* Mot. 13.  Defendant further notes that Plaintiff alleges she was required to produce original documents for re-credentialing, assigned to new duties to reduce her job stress, subjected to performance counseling, required to attend meetings, had her case load reduced, and that various staff members sought complaints from co-workers critical of Plaintiff.  *Id.* at 14.  According to Defendant, "[n]one of these actions individually or collectively even come remotely close to meeting the high threshold for making a complaint of intentional infliction of emotional distress."  *Id.*

In response, Plaintiff cites to evidence indicating that Terhakopian (1) tried to take away Plaintiff's office, (2) tried to change Plaintiff's job, (3) chastised Plaintiff, (4) forced Plaintiff to justify her job, (5) made Plaintiff defend her treatment of patients, (6) called Plaintiff names, (7) cut Plaintiff's case load, (8) interfered with Plaintiff's contract with Spectrum, (9) counseled Plaintiff, and (10) "listed [Plaintiff's] deficiencies" to other doctors.  Resp. 5-6.  According to Plaintiff, these actions show "a pattern of outrageous conduct" that was "so all encompassing and severe, no reasonable person could be expected to endure it without undergoing unreasonable suffering."  *Id.* at 6.

Though Plaintiff has provided evidentiary support showing that a number of her complained of incidents did in fact occur, *see* Resp. Exs. B-E ("Plaintiff's Evidence"), ECF No. 34-1, the Court agrees with Defendant that Plaintiff has failed to offer any proof that those incidents are more than an

ordinary employment dispute. Plaintiff's claims that Terhakopian tried to take away Plaintiff's office, attempted to change Plaintiff's job, forced Plaintiff to justify her job, made Plaintiff defend her treatment of patients, counseled Plaintiff, and cut Plaintiff's case load are all examples of Terhakopian reviewing, supervising, transferring, and disciplining Plaintiff in a permissible manner that a supervisor "must have latitude to exercise" in order to run a business. *See GTE S.W., Inc.*, 998 S.W.2d at 612; *see also Dalrymple*, 997 S.W.2d at 216 (finding insufficient evidence of extreme and outrageous conduct where employer made negative comments that were reflected in employee's tenure file, restricted employee's speech regarding that file, and allegedly assigned employee an excessive case load); *United States ex rel. Gonzalez v. Fresenius Med. Care. N. Am.*, 748 F. Supp. 2d 95, 105-06 (W.D. Tex. 2010) (finding evidence that employer issued corrective action notice and suspended employee on two occasions, took away some of employee's job duties, prohibited employee from speaking to patients, and caused other employees to limit contact with employee was "far from" extreme and outrageous).

Further, while the evidence indicates that Terhakopian may also have once called Plaintiff "neurotic," yelled at Plaintiff on two occasions, and listed Plaintiff's deficiencies to other doctors, these occurrences, though rude and insulting, do not raise a genuine issue of fact as to whether Terhakopian engaged in the level of "terrorizing, threatening, and assaultive conduct" necessary to raise those actions outside the context of an ordinary employment dispute. *See Williams v. Shell Exploration & Prod. Co. – Americas*, No. 14-13-00309-CV, 2014 WL 3555741, at *5 (Tex. App. July 17, 2014) (finding evidence indicating that employer beckoned plaintiff like a dog, told plaintiff to "shut up" and not speak unless given permission, intended to end plaintiff's career, and refused to acknowledge plaintiff in the hallway was insufficient to establish extreme and outrageous conduct in employment context). Indeed, in order to establish a sufficient claim for intentional infliction of emotional distress in the employment context, Texas courts have required evidence of far more egregious conduct than that presented by Plaintiff. *See GTE S.W., Inc.*, 998 S.W.2d at 612-17

9

(finding sufficiently extreme conduct in workplace dispute where supervisor created a "den of terror" by engaging in a pattern of "grossly abusive, threatening, and degrading conduct," such as daily use of harshest vulgarities, frequently physically and verbally assaulting employees, and repeatedly calling one employee into his office to stare at her for extended periods).

Accordingly, the Court finds that Defendant has shown there is no genuine dispute of fact that the conduct and atmosphere in the workplace was not sufficiently extreme and outrageous to bring the dispute outside the realm of an ordinary employment dispute. *See GTE S.W., Inc.*, 998 S.W.2d at 613. Defendant, therefore, is entitled to summary judgment on Plaintiff's claim for intentional infliction of emotional distress. *See Celotex*, 477 U.S. at 322-23 (stating that Federal Rule of Civil Procedure 56(c) "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case").

### 2. Plaintiff has not provided sufficient evidence to raise a genuine issue of fact as to whether she suffered severe emotional distress

Defendant further argues that "[e]ven if there was a question regarding whether the alleged conduct was [extreme and outrageous], Plaintiff cannot demonstrate [a] genuine dispute as to whether she suffered severe emotional distress." Mot. 14. Plaintiff responds that her asserted emotional damages are sufficient to survive summary judgment. Resp. 6.

"In order to prove intentional infliction of emotional distress, [a plaintiff] must show that [a defendant] intentionally or recklessly engaged in extreme and outrageous conduct that caused [her] severe emotional distress." *Teemac v. Frito Lay, Inc.*, Civil Action No. 3:14-CV-2908-G (BF), 2015 WL 4385777, at *5 (N.D. Tex. July 16, 2015). "Severe emotional distress is distress that is so severe that no reasonable person could be expected to endure it." *GTE S.W., Inc.*, 998 S.W.2d at 618. "This requires proof of more than mere worry, anxiety, vexation, embarrassment, or anger." *McCarty v. Montgomery*, 290 S.W.3d 525, 539 (Tex. App. 2009).

To support its argument that "Plaintiff cannot demonstrate [that] she suffered severe emotional distress," *see* Mot. 14, Defendant notes that Plaintiff admits she suffered no physical harm nor received any other medical or mental health treatment in relation to her alleged mental distress. *See* Mot. 15; Grost Dep. 33, 49.  Defendant further points to evidence that Plaintiff resigned her job at the Medical Center because she was no longer able to continue seeing patients, not because of her mental anguish. *See* Mot. 15; Grost Dep. 46.

In response, Plaintiff asserts that her "grief, severe disappointment, indignation, wounded pride, shame, despair or public humiliation or a combination of any of these" is sufficient to survive summary judgment. *See* Resp. 6.  Plaintiff, however, has completely failed to "designate [any] specific facts showing that there is a genuine issue for trial" regarding the severity of her alleged mental anguish. *See Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015).  Nor does any of the evidence attached to Plaintiff's Response indicate in any way that Plaintiff suffered severe emotional distress. *See generally* Pl.'s Evidence.  Plaintiff's bald allegations of embarrassment, humiliation, and despair do not create an issue of fact as to whether she has suffered severe emotional distress and are therefore insufficient to survive summary judgment. *See Blanche v. First Nationwide Mortg. Corp.*, 74 S.W.3d 444, 454 (Tex. App. 2002); *see also Little*, 37 F.3d at 1075 (stating that "conclusory allegations" and "unsubstantiated assertions" are insufficient to show a factual controversy to survive summary judgment).

Accordingly, because Plaintiff has failed to offer any evidence establishing a genuine issue of fact as to whether she suffered severe emotional distress, Defendant is entitled to summary judgment on Plaintiff's claim for intentional infliction of emotional distress. *See Celotex*, 477 U.S. at 322-23.

### III.   CONCLUSION

For the reasons set forth above, it is hereby **ORDERED** that the Motion, ECF No. 32, is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk shall close the Case.

**SO ORDERED**.

SIGNED this 25th day of August, 2015.

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE